## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**THOMAS RAY BUTTLER,**

     **Plaintiff,**

**v.**

**CITY OF SPERRY, JOHN CARR,**

     **Defendants.**

**4:20-cv-00355-JAR-CDL**

### OPINION AND ORDER

Jane A. Restani, Judge[*]:

     This case involves the two-day civil commitment of Thomas Buttler for a mental health evaluation following Officer John Carr's filing of petitions seeking emergency detention and evaluation. Buttler brought this action against the City of Sperry and Officer Carr. Before the court are two motions for summary judgment filed by the defendants. Def. City of Sperry's Mot. Summ. J. & Br., ECF No. 39 (May 14, 2021) ("Sperry Br."); Def. John Carr's Mot. Summ. J. & Br., ECF No. 40 (May 14, 2021) ("Carr Br.").

### UNDISPUTED FACTS

     The court draws the following undisputed material facts from the record.

     Prior to April 24, 2019, Buttler complained to the police about "vibrations" at his home to the Sperry Police Department and Officer Carr on several occasions.

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Carr Br. at 2, ¶ 10; Pl. Resp. Oppo. To Def. Carr Mot. at 8, ¶ 8, ECF No. 45 (June 4, 2021) ("Pl. Carr Resp."); Pl. Carr Resp., Ex. 8 at 1.  Officer Carr had gone to Buttler's neighborhood and house multiple times after Buttler's complaints, but never noticed any vibrations.  Carr Br. at 2–3, ¶ 12; Pl. Carr Resp. at 8, ¶ 10. Officer Carr described Buttler as "agitated" at times.  Carr Br. at 3, ¶ 13; Pl. Carr Resp. at 8, ¶ 11; Pl. Carr Resp., Ex. 4 at 24–25.  Officer Carr reported that Buttler was wandering around looking for the source of the vibrations at "2:00 or 3:00 in the morning."  See Carr Br. at 2–3, ¶ 12–13; Pl. Carr Resp. at 8–9, ¶ 11, 13; Pl. Carr Resp., Ex. 4 at 24–25.

On April 24, 2019, Buttler went to the police station and met with Officer Carr to discuss the vibrations.  Carr Br. at 1, ¶ 1; Pl. Carr Resp. at 2, ¶ 1.  Officer Carr recorded their conversation with his bodycam.  See EXHIBIT(S) # 11 (1 CD), ECF No. 46 (June 7, 2021) (Ex. 11 of Pl. Carr Resp.).  In the recording, Buttler explained that he had been searching for the source of the vibrations, which he could hear only inside of his house.  Id.  He stated that the vibrations were causing his house to "shak[e] to pieces."  Id.  Officer Carr responded that his contacts at the United States Geological Survey could not identify anything causing the shaking. Id.  Buttler said he did not think it was seismic activity but explained that he checks the utility poles and street signs for shaking throughout the day and night. Id.  Buttler said that a large oak tree was vibrating at "1:30, 2 o'clock in the morning" while he was walking around looking for the shaking.  Id. at 6:01.  Buttler

also asked Officer Carr where the sewer pipes and pumps were, believing that those could be the source.  Id.

Officer Carr later stated in a deposition that at that point in time he began to believe "that this may be a delusional thing."  Pl. Carr Resp., Ex. 2 at 15 ("Carr Depo."); Carr Br. at 3, ¶ 15.  Officer Carr explained that, after multiple encounters with Buttler, Carr believed Buttler was "a person whose level of distress or mental health symptoms have exceeded the ability to manage his/her behavior or emotions."[1]  Carr Br. at 4, ¶ 19–20; Carr Depo. at 37–38.  Officer Carr specifically reported that he was concerned about Buttler because of the "multiple times Mr. Buttler reported he wanders around at night looking for the source of the vibrations sometimes at two or three in the morning."  Carr Br. at 3, ¶ 17; Carr Depo. at 24–25.

After Buttler left, Officer Carr prepared a police report detailing the interaction.  Carr Br. at 5, ¶ 29; Sperry Br., Ex. 4 ("MHC Records") at 4–8.  The report indicated that Buttler was "suspected to be 10-85,"[2] noted that Buttler complained approximately 3–4 times a week for the past 8 weeks, and stated that Buttler appeared "agitated."  MHC Records at 6–7.  Buttler's complaints were about "someone 'running a large generator' and that 'vibrations ad [sic] destroying the

[1] During Officer Carr's deposition, Buttler's counsel asked Officer Carr whether Buttler showed signs of "crisis."  Carr Depo. at 37.  Officer Carr asked the attorney to define crisis, and this was the definition provided, which Officer Carr agreed Buttler met.  Carr Depo. at 37–38.
[2] 10-85 or 1085 apparently refers to the Tulsa County police radio reference for a person possibly needing mental health treatment.

house.'" Id. at 7.  The report also stated that Buttler was "for the most part []
congenial," but also stated that he was "know[n] to have a larger collection of
firearms.  [But] Buttler has NOT exhibited any violent tendencies."[3]  MHC Records
at 7 (emphasis in original).  Officer Carr allowed Buttler to leave the police station
on Buttler's own.  Carr Depo. at 39.

Sometime after, Officer Carr met with Chief of Police Justin Burch to discuss
Buttler.  Sperry Br., Ex. 1 ("Burch Depo.") at 4.  Chief Burch believed he spoke with
Officer Carr about Buttler "being a potential 1085, but not necessarily disturbed."
Burch Depo. at 4.  Chief Burch stated that he told Officer Carr that the situation
did not need emergency detention, but advised that Officer Carr "might want to go
civil route," referring to a petition for a mental health evaluation.  Burch Depo. at 5.
Chief Burch had done only a single emergency detention in his career, which
required "immediate danger to himself or others" that Chief Burch believed
Buttler's situation did not meet.  Burch Depo. at 5–7.  Chief Burch agreed with
Officer Carr's decision to pursue the treatment petition.  Burch Depo. at 7.
Although officers received some training in mental health issues, there was "not a
policy and procedure" or training for officers to file a treatment petition at the time.
Burch Depo. at 12–13.

---

[3] In a deposition, Chief Burch was asked whether Buttler's firearms were a
collection of "antique, collectible firearms."  Sperry Br., Ex. 1 ("Burch Depo.") at 49.
The transcript does not contain Chief Burch's answer.  Id.  Regardless, Chief Burch
explained that he only knew Buttler from "prior incidents" that predated Officer
Carr's employment and that Officer Carr was not familiar with the prior incidents.
Burch Depo. at 48–49.  Nothing in the record indicates the source of Officer Carr's
knowledge about Buttler's firearms or their functionality.

On April 29, 2019, Officer Carr filed an "Out of Custody Petition for Mental Health Treatment and Application for Release of Confidential Records."  MHC Records at 2–8; Carr Br. at 5, ¶ 30.  The petition required that Officer Carr had "good reason to believe, and does believe" that Buttler was "a person requiring treatment as defined in 43A O.S. § 1-103(13)."[4]  MHC Records at 2.  He attached the police report as "the facts upon which these allegations are based."  MHC Records at 2–8; Carr Br. at 5, ¶ 30;.  At the same time, Officer Carr also filed a "Request for Pre-Hearing Detention," also relying on the police report.  MHC Records at 9.  The form to file the request stated that the respondent "represent[ed] a risk of harm to self or others such that an order directing pre-hearing detention . . . is necessary."  MHC Records at 9.

Later, in a deposition, Officer Carr explained that he did not believe upon filing the petitions that Buttler was "in such an extreme level of danger" that an emergency order for detention was necessary.  Carr Depo. at 40.  Officer Carr thought Buttler needed treatment but was not at an extreme level of danger to himself or others; however, Officer Carr completed the pre-hearing detention request because it was attached to the petition.  Carr Depo. at 40–41.  He testified that he did not "pay enough attention" to the form and did not mean to request pre-hearing detention.  Carr Depo. at 48–49.

On April 30, 2019, after considering the forms Officer Carr filed, the Tulsa mental health court ordered a mental health evaluation and pre-hearing detention

---

[4] See infra note 8.

of Buttler.  MHC Records at 10–16.  On May 1, 2019, several Tulsa County sheriff's officers arrested Buttler for the purpose of psychiatric evaluation.; Pl. Carr Resp., Ex. 8.  On May 3, 2019, the treatment center discharged Buttler without medication or the need for follow-up.  MHC Records at 17–22.

In his complaint, Buttler alleges the following claims under 42 U.S.C. § 1983: Count 1 alleges a violation of his right to due process and to be free from unreasonable seizure and detention against Officer Carr for filing "a Petition for Plaintiff's involuntary commitment that was entirely and demonstrably incorrect" and devoid of probable cause; Count 2 alleges that the unconstitutional policies and customs of the City of Sperry directly led to the violations, constituting municipal liability;[5] Count 3 alleges state law negligence, wrongful imprisonment, and false arrest claims against the City of Sperry as liable for Officer Carr's failure to use reasonable care in the scope of his employment; and Count 4 alleges state law malicious prosecution against the City of Sperry for Officer Carr filing the petitions without probable cause.  Compl. at 8–13, ECF No. 2 (July 22, 2020) ("Compl.").[6]  For Count 2, Buttler specifically alleged that there was a municipal policy based on the City of Sperry ratifying Officer Carr's conduct and failing to train its officers in the mental health context.  Compl. at 11–12.

Defendants now move for summary judgment.

---

[5] See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

[6] In response briefing, Buttler did not address the motion for summary judgment as it relates to state law Count 4, and the count is deemed waived.  See Carr Br. at 22–23; Pl. Carr Resp. at 23.

## JURISDICTION AND STANDARD OF REVIEW

Buttler seeks relief for violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331, 1343.  Compl. at 2.  Buttler also asserts the court's supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.  Compl. at 2.

The court shall grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  It should not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must draw all reasonable inferences in a light most favorable to the non-movant.  Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011).

## DISCUSSION

### I.   Officer Carr's Motion for Summary Judgment

"[T]he seizure of a person for an emergency mental health evaluation is a restriction on the fundamental right of personal liberty and so is governed by the reasonableness requirement of the Fourth Amendment."  Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla., 482 F.3d 1232, 1239 (10th Cir. 2007).  This type of seizure is closely analogous to criminal arrest, and "must be supported by probable cause sufficient to justify a criminal arrest."  Id. at 1240.  "[O]fficers who decide to commit an individual for a mental health evaluation must be able to articulate specific facts that lead them to believe the person is a threat to herself or others."

Id.; see also Anaya v. Crossroads Managed Care Sys. Inc., 195 F.3d 584, 591–92 (10th Cir. 1999).

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" City of Tahlequah, Oklahoma v. Bond, 142 S. Ct. 9, 11 (2021) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The plaintiff bears the burden of demonstrating (1) that the officer violated his constitutional rights, and (2) that the law supporting the violation was clearly established when the alleged constitutional violation occurred. Tenorio v. Pitzer, 802 F.3d 1160, 1164 (10th Cir. 2015).

Buttler asserts that Officer Carr violated Buttler's "right to be free from confinement absent a reasonable belief that he posed a real danger to himself or others," and argues that Officer Carr lacked probable cause to find that Buttler was a danger to himself or others. Pl. Carr Resp. at 14. He asserts that none of his conduct matched the definition of a "person requiring treatment" under 43A O.S. § 1-103(13) that the treatment petition required or that he "represented a risk of harm to self or others" as required by the petition for pre-hearing detention. Pl. Carr Resp. at 19. Applying the two-part inquiry for qualified immunity, the court

cannot conclude that Officer Carr is entitled to this defense based on the summary judgment record.

### a. Constitutional Violation

As mentioned above, a seizure for a mental health evaluation is governed by the Fourth Amendment's reasonableness requirement and requires probable cause. Meyer, 482 F.3d at 1239. The Tenth Circuit has made clear that this probable cause is held to the same standard as that in criminal arrests and search warrants. See id. at 1240–42 (citing Snell v. Tunnell, 920 F.2d 673, 698–99 (10th Cir. 1990)); Pino v. Higgs, 75 F.3d 1461, 1468 (10th Cir. 1996).

For an arrest warrant, the warrant "must be supported by probable cause to comply with the Fourth Amendment. 'Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.'" Taylor v. Meacham, 82 F.3d 1556, 1562 (10th Cir. 1996) (quoting Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)). "It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." Wolford, 78 F.3d at 489. "If an arrest warrant affidavit contains false statements, 'the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.'" Taylor, 82 F.3d at 1562 (quoting Wolford, 78 F.3d at 489). Here, the court looks to whether Officer Carr articulated specific facts that led him or would

lead a reasonable police officer to believe Buttler was a threat to himself or others.
See Anaya, 195 F.3d at 591–92.

Analyzing whether there was probable cause to seize Buttler first requires
identifying precisely what Officer Carr put in front of the mental health court.
Officer Carr filed two petitions, one for mental health treatment and another for
pre-hearing detention.  MHC Records at 2, 9.  The only statement he made on the
petitions was "See Attached Sperry Police Report."  MHC Records at 2, 9.  The
police report, though very cursory, truthfully explained Buttler's complaints and
Officer Carr's interactions with Buttler.  MHC Records at 7.  The report also stated
that Buttler was "congenial," and had "NOT exhibited any violent tendencies."
MHC Records at 7 (emphasis in original).  Officer Carr also included that Buttler
was "know[n] to have a larger collection of firearms," but provided no additional
context regarding the firearms.[7]  MHC Records at 7.

On the summary judgment record, none of these statements were specific
facts that could have led to a belief that Buttler was a threat to himself or others.
The police report expressly stated that Buttler had no violent tendencies.  Although
it expressed that Buttler possessed firearms, nothing indicated how Officer Carr
knew of the collection, whether it was functional, or said that Buttler had ever used
or displayed a firearm in connection with any act.  It is a reasonable inference that
Officer Carr only knew about the firearm collection through Chief Burch, who knew

---

[7] In his deposition but not in the police report, Officer Carr noted that Buttler lived
near a school but never indicated that Buttler had been seen near it or made any
threats related to it or anything else.  See Carr Depo. at 25.

that the collection was comprised of antique firearms.  At best, the firearm statement added nothing to probable cause, and, at worst, it was a false or misleading statement that should be set aside from the probable cause analysis. Thus, nothing in the police report suggested that Buttler was a threat to himself or others.

Because nothing in the police report could have reasonably shown probable cause, the court assumes that the mental health court relied upon the fact that Officer Carr signed the petition, which required that he had "good reason to believe, and does believe, that the Respondent is a person requiring treatment as defined in 43A § 1-103(13)."[8]  See MHC Records at 2.  And further, the petition for pre-hearing detention required that Buttler was an immediate danger.  MHC Records at 2.  In a deposition after the fact, Officer Carr admitted that Buttler did not fit any of the statutory categories precisely.  See Carr Depo. at 43–46.  Officer Carr stated that he

---

[8] A person requiring treatment is defined as someone who "because of his or her mental illness . . .:
    (1) poses a substantial risk of immediate physical harm to self as manifested by evidence or serious threats of or attempts at suicide or other significant self-inflicted bodily harm,
    (2) poses a substantial risk of immediate physical harm to another person or persons as manifested by evidence of violent behavior directed toward another person or persons,
    (3) has placed another person or persons in a reasonable fear of violent behavior directed towards such person or persons or serious physical harm to them as manifested by serious and immediate threats,
    (4) is in a condition of severe deterioration such that, without immediate intervention, there exists a substantial risk that severe impairment or injury will result to the person, or
    (5) poses a substantial risk of immediate serious physical injury to self or death as manifested by evidence that the person is unable to provide for and is not providing for his or her basic physical needs."  43 O.S. § 1-103(13)

believed, however, Buttler "fits best" into § 1-103(13)(4) because Buttler's action of looking for the vibrations at 2:00am in the dark placed him "in a level of danger." See Carr Depo. at 43–45; Carr Br. at 3, ¶ 17.[9]  Officer Carr, however, did not include anything concerning the night time walks in the police report because apparently he never observed them.  Thus, he could not say that Buttler ran into traffic heedlessly or otherwise behaved in a dangerous way for a pedestrian.  Officer Carr did not state to the mental health court that any such activity represented an increased risk of danger that Buttler posed to himself.  On summary judgment, the court cannot infer that Officer Carr believed that Buttler fit any of the statutory criteria or was a sufficient danger to himself or others.  Thus, signing the petition for treatment and filing the additional petition for pre-hearing detention representing that Buttler was in immediate danger was a "falsification or omission of evidence." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The evidence leaves facts in dispute, such as whether Officer Carr believed Buttler fit § 1-103(13) or if he knowingly filed, recklessly filed, or was sufficiently incompetent in filing, a petition wrongly representing immediate dangerousness. The record, however, clearly shows that Officer Carr stated he did not intend to sign the petition for emergency pre-hearing detention.  At a minimum, this reflected carelessness or recklessness.  As a result, drawing reasonable inferences in Buttler's

---

[9] Officer Carr testified that he would have detained Buttler on the spot if he determined that Buttler met the subsection on April 24, and thus, because he did not, it could be assumed he did not reach that determination.  Carr Depo. at 46–47.

favor, Officer Carr had Buttler seized without probable cause in violation of Buttler's Fourth Amendment rights.

### b. Clearly Established

The Supreme Court has repeatedly instructed that "clearly established law" should not be defined "at too high a level of generality."  See, e.g., Bond v. City of Tahlequah, 142 S. Ct. at 11.  The "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Wesby, 138 S. Ct. at 590 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  Such specificity is "especially important in the Fourth Amendment context," where it is "sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation."  Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted).  This requires controlling authority, "i.e., a Supreme Court or [a] Tenth Circuit published decision, or a 'robust consensus of cases of persuasive authority,' made clear the unconstitutionality" of Officer Carr's actions.  Lewis v. City of Edmond, 48 F.4th 1193, 1198 (10th Cir. 2022) (quoting Wesby, 138 S. Ct. at 589–90)).

Here, the law supporting that Officer Carr violated Buttler's Fourth Amendment rights was clearly established.  First, Meyer held that "officers who decide to commit an individual for a mental health evaluation must be able to articulate specific facts that lead them to believe the person is a threat," and specifically noted that a right against an insufficient commitment was clearly established at that time for purposes of qualified immunity.  See Meyer, 482 F.3d at

1239–40.  And second, the facts in <u>Meyer</u> centered on an attempt by police officers to commit a woman to a mental health facility "in which there was no violence, no threats of violence, or damage to property."  <u>Id.</u>  Although <u>Meyer</u> additionally involved police officers who deliberately falsified statements, that does not distinguish its clear holding that police officers must have probable cause that a person is dangerous to be committed.  <u>Id.</u> at 1242.  A reasonable police officer would have recognized based on <u>Meyer</u> that he needed probable cause to file a petition for mental health treatment and pre-hearing detention for Buttler.

Further, it is clearly established that there is a "prohibition on falsification or omission of evidence" for information supporting an arrest warrant.  <u>Pierce</u>, 359 F.3d at 1298.  And the Tenth Circuit has made clear that the probable cause requirement for mental health confinements is equivalent to criminal arrest.  <u>See</u> <u>Meyer</u>, 482 F.3d at 1240; <u>Pino</u>, 75 F.3d at 1468.  Although there is no fact pattern exactly on point, that is likely because a police officer should know not to file erroneous petitions with pages that he did not review, and this pattern is not likely to occur except in rare instances.  There is "obvious clarity" that a warrant cannot contain false statements.  <u>See</u> <u>Lowe v. Raemisch</u>, 864 F.3d 1205, 1208 (10th Cir. 2017) ("The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." (emphasis and quotation marks omitted)).

Qualified immunity shields an official as long as the official's conduct does not violate clearly established law that "a reasonable person would have known."

See Mullenix, 577 U.S. at 11 (citation omitted).  A reasonable officer would have been aware that he needed probable cause to have someone seized.  A reasonable officer would have been aware that Buttler was not a danger to himself or others when he was, at worst, peacefully walking in search of vibrations that may or may not have existed.  Accordingly, the court denies Officer Carr the protection of qualified immunity.

## II.    City of Sperry's Motion for Summary Judgment

Under § 1983, a municipality cannot be held strictly or vicariously liable for the actions of its employees; liability can attach only when "action pursuant to official municipal policy of some nature caused a constitutional tort."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).  Accordingly, "[t]o succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: '(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.'"  Cordova v. Aragon, 569 F.3d 1183, 1193 (10th Cir. 2009) (quoting Walker v. City of Orem, 451 F.3d 1139, 1152 (10th Cir. 2006)).

The Tenth Circuit has recognized policies meeting the Monell standard as those arising from "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees."  Pyle v. Woods, 874 F.3d 1257,

1266 (10th Cir. 2017) (citing <u>Brammer-Hoelter v. Twin Peaks Charter Acad.</u>, 602 F.3d 1175, 1189 (10th Cir. 2010)).  Buttler alleges that the City of Sperry had a custom of failing to train police officers on filing for mental health treatment and detention and that Chief Burch ratified Officer Carr's decision.  Here, Buttler cannot show that the City of Sperry had a policy or custom that was the moving force for Officer Carr's offending behavior.

### a. Failure to Train

A plaintiff seeking to establish municipality liability for inadequate training or other supervisory practices "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." <u>Hinkle v. Beckham Cnty. Bd. of Cnty. Com'rs.</u>, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting <u>Board of Cnt. Com'rs. Of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 407 (1997)).  This standard "may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  <u>Waller v. City & Cty. of Denver</u>, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307 (10th Cir. 1998)). Although typically notice is "established by proving the existence of a pattern of tortious conduct," it can also be established "in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable or plainly obvious."  <u>Waller</u>, 932 F.3d at 1285 (internal quotation marks omitted); <u>see also</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 63–64 (2011).

In <u>Allen v. Muskogee, Okl.</u>, the Tenth Circuit concluded a claim fit the "narrow range of circumstances" where "a single violation of federal rights may be a highly predictable consequence [of a municipality's action or inaction]." 119 F.3d 837, 845 (10th Cir. 1997). There, the summary judgment record "support[ed] an inference that the City trained its officers to leave cover and approach armed suicidal, emotionally disturbed persons and to try to disarm them . . . ." <u>Id.</u> at 843. After participating in this training, police officers approached Terry Allen's vehicle—where a suicidal and armed Allen sat with a leg out the window—and attempted to wrestle his gun from him. <u>Id.</u> at 839. In the end, "shots were exchanged," and Allen was hit four times and killed. <u>Id.</u> The court held that "a single violation of federal rights may be a highly predictable consequence of failure to train officers to handle recurring situations with an obvious potential for such a violation." <u>Id.</u> at 845. Because "officers will frequently have to deal with armed emotionally upset persons" and the City's training amplified the possibility "of a violent response," the Tenth Circuit concluded that "the City's failure to properly train its officers reflected deliberate indifference to the obvious consequence of the City's choice." <u>Id.</u>

In <u>Hinkle</u>, the Tenth Circuit also held that the policy of strip searching all detainees in jail before housing them reflected "deliberate indifference to the obvious consequences." 962 F.3d at 1242. The county strip searched all detainees before making housing assignments, which would inevitably include some detainees that would not be placed in the jail's general population where the danger to be

17

avoided existed.  See id.  A former sheriff was arrested and unreasonably searched because he was not going to general housing.  Id.  Although there was no evidence of "a pattern of tortious conduct," the court concluded that it was "plainly obvious" that a detainee would eventually be needlessly strip searched because all detainees were searched.  Id.  Thus, the Tenth Circuit held that the case fell within the "narrow range of circumstances" where a Monell claim could proceed without prior history.  Id.

Here, the failure-to-train theory fails because there is no deliberate indifference.  In the summary judgment record, there is no evidence of a pattern of prior violations that would provide notice to the City of Sperry because Officer Carr had never filed the paperwork before and Chief Burch testified that he had done it once years before, in 2012 or 2013.  See Carr Depo. at 30; Burch Depo. at 5; Waller, 932 F.3d at 1284.  Thus, Buttler can only show deliberate indifference if this is one of the rare cases where the consequences resulting from failure to train were "highly predictable" and "patently obvious."  See Connick, 563 U.S. at 64.  This case does not meet that high bar.

Both Allen and Hinkle involved situations that occur frequently and resulted in patently obvious outcomes of escalating violence and strip searching every detainee, even if the actual violation had not yet occurred.  See Allen, 119 F.3d at 845; see also Hinkle, 962 F.3d at 1242.  The Tenth Circuit in Allen recognized that the narrow circumstances required a "highly predictable" violation by officers in handling "recurring situations."  Allen, 119 F.3d at 845.  This record contains

nothing to indicate that this was a recurring situation or was to be expected.  The Supreme Court has instructed that municipalities should be held liable for failure to train only in limited circumstances, and there was no actual or constructive notice here.  See Connick, 563 U.S. at 62–63.  Thus, the failure-to-train theory of municipal liability fails.

### b. Ratification

Under this theory, "a municipality will not be found liable . . . unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."  Bryson v. City of Oklahoma City, 627 F.3d 784, 790 (10th Cir. 2010).  In other words, only "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, [will] their ratification . . . be chargeable to the municipality because their decision is final."  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1998).  "But 'mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification.'"  Finlinson v. Millard Cnty., 2018 WL 5438436, at *27 (D. Utah Oct. 29, 2018) (quoting Feliciano v. City of Cleveland, 988 F.2d 649, 656 (6th Cir. 1993)).  "Otherwise, a county or municipality 'would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from respondeat superior liability.'"  Finlinson, 2018 WL at *27 (quoting Feliciano, 988 F.2d at 656); see also Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) ("To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983 law . . . .").

19

Here, assuming _arguendo_ that Chief Burch is the authorized policy maker, there is no evidence that Chief Burch ratified Officer Carr's specific actions and the basis of his actions.  At most, Buttler has shown that Chief Burch merely acquiesced in Officer Carr's general decision to pursue civil remedies.  Chief Burch explained that he had suggested to Officer Carr that a petition for a mental health treatment might be a feasible course of action, but expressly disagreed with filing any petition for emergency detention.  _See_ Burch Depo. at 5.  Buttler offers nothing to dispute this.  The fact that Officer Carr proceeded to file the emergency detention petition, even accidentally as he asserts, demonstrates that Chief Burch did not fully approve of how Officer Carr implemented his plan.

In any case, although Chief Burch said he "ratified" Officer Carr's actions, "ratified" was prompted by Buttler's counsel during a deposition, not a word Chief Burch himself used.  _See_ Burch Depo. at 12–13.  This post-hoc "ratification" only occurred when Buttler's counsel had Chief Burch review the police report after the fact.  _See_ Burch Depo. at 13.  Despite Buttler's post-hoc "ratification" theory, Chief Burch cannot create liability for the City of Sperry by stating after the incident that everything Officer Carr did was permissible.  _See_ _Cordova_, 569 F.3d at 1194 ("[B]asic principals [sic] of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation").  What is relevant is whether Chief Burch approved specific actions taken by Officer Carr before the actions were taken.  _See_ _id._

Buttler apparently contends that two scenarios are possible.  In the first, Officer Carr was reckless or incompetent because he filed papers seeking immediate pre-hearing detention of Buttler when he did not intend to do so.  See Pl. Carr Resp. at 18–19.  Logically, Chief Burch could not have approved a course of action Officer Carr did not intend.  In the second, Officer Carr knew he did not have probable cause for Buttler's arrest but he knowingly filed the petition to get rid of a bothersome citizen.  See Pl. Carr Resp. at 22.  Neither the undisputed facts nor other facts reasonably in dispute lead to the conclusion that Chief Burch approved actions based on such motivation.

The evidence only shows that Chief Burch agreed with a single discretionary decision his subordinate made.  There is no evidence that Chief Burch reviewed the petition, or that he was aware of what Officer Carr would have attached to the petition.  Chief Burch was generally aware of Buttler's complaints, but he was unfamiliar with the facts of the investigation.  At most, Chief Burch acquiesced in a course of action that might eventually have required Buttler to appear at a mental health hearing.  This does not establish that Chief Burch directed or otherwise caused Officer Carr's actions.  Thus, this does not support municipal liability under a ratification theory.  Accordingly, because all of Buttler's proposed theories of liability fail, his Monell claim must also fail.[10]

---

[10] Because the court concludes for purposes of summary judgment that Officer Carr seized Buttler without probable cause, in violation of the Fourth Amendment, the court denies defendant's motion in its present form as to Buttler's state law false arrest and negligence claims against the City of Sperry.

**CONCLUSION**

Based on the summary judgment record, the court cannot conclude that Officer Carr is entitled to qualified immunity. The City of Sperry, however, is entitled to summary judgment on all of Buttler's theories of 42 U.S.C. § 1983 municipal liability. Accordingly, it is

**ORDERED** that Defendant Officer Carr's Motion for Summary Judgment is **DENIED**; and further

**ORDERED** that Defendant City of Sperry's Motion for Summary Judgment is **GRANTED in part, DENIED in part**.

The parties shall provide a status report and schedule for further proceedings within 30 days hereof.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated:      February 8, 2023
            New York, New York